# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

JIMMY CHERAMIE                    CIVIL ACTION

VERSUS                          NO. 12-0147

N. BURL CAIN, WARDEN           SECTION "C"(5)

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. See 28 U.S.C. §2254(e)(2). IT IS HEREBY RECOMMENDED that the instant petition be **DISMISSED WITH PREJUDICE.**

## PROCEDURAL HISTORY[1]

Petitioner, Jimmy Cheramie, is a state prisoner currently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana. Cheramie was charged by bill of information with two counts of taking vehicles valued at more than $500.00 (counts 1 and 6), one count of attempted armed robbery (count 2), one count of

---

[1]Portions of the procedural history are taken from the Louisiana First Circuit Court of Appeal's opinion, State v. Cheramie, 992 So.2d 593 (Table), 2008 WL 4190665, No. 2008-KA-0703 (La. App. 1 Cir. 9/12/08). St. Rec. Vol. 3 of 4.

aggravated battery with a dangerous weapon (count 3), one count of armed robbery (count 4) and aggravated burglary (count 5).[2]  On November 13, 2007, trial before a jury commenced in the Seventeenth Judicial District Court for the Parish of Lafourche, State of Louisiana.  On November 14, 2007, Cheramie was found guilty as charged on counts 2, 3 and 6.  As to count 1, the jury was deadlocked and the trial court declared a mistrial.  As to counts 4 and 5, Cheramie was found not guilty.

On December 12, 2007, the district court sentenced Cheramie as follows: count 2 (attempted armed robbery) - 35 years imprisonment at hard labor without the benefit of probation, parole, suspension of sentence; count 3 (aggravated battery) - five years imprisonment at hard labor; count 6 (theft of property valued at $500 or more) - five years imprisonment at hard labor.  The court ordered the sentences to be served consecutively.[3]

On September 12, 2008, the Louisiana First Circuit Court of Appeal affirmed Cheramie's convictions and sentences.  State v. Cheramie, 992 So.2d 593 (Table), 2008 WL 4190665, No. 2008-KA-0703 (La. App. 1 Cir. 9/12/08) (St. Rec. Vol. 3 of 4).  On August 12, 2009, the Louisiana Supreme Court denied Cheramie's writ application without opinion.  State ex rel. Cheramie v. State, 17

_____

[2]St. Rec. Vol. 1 of 4; Bill of Information.

[3]St. Rec. Vol. 1 of 4; Sentence.

So.3d 375, 2008-KH-2547 (La. 2009) (St. Rec. Vol. 3 of 4).

On December 16, 2009, Cheramie filed a post-conviction application with the state district court. (St. Rec. Vol. 4 of 4). Cheramie's effort in this regard ended on June 24, 2011, when the Louisiana Supreme Court denied his writ application without opinion. State ex rel. Cheramie v. State, 64 So.3d 210, 2010-KH-1445 (La. 2011).

On January 12, 2012, Cheramie filed the instant federal habeas corpus action, raising the following claims: 1) he received ineffective assistance of appellate and trial counsel;[4] 2) there was insufficient evidence to support his conviction in part because the State used perjured testimony;[5] 3) the bill of information lodged against him was defective;[6] 4) the State failed to fully disclose a plea bargain agreement reached with his co-defendant, Storm Dantin; and 5) he received an excessive sentence. (Rec. Doc. No. 1). The State concedes that the instant action is timely and that Cheramie has exhausted his state court remedies. (Rec. Doc. No. 9, pp. 5-6).

---

[4]Claim 1) represents a compilation of Cheramie's claims I, III and IV.

[5]Claim 2) represents a compilation of Cheramie's claims II and V.

[6]Claim 3) represents a compilation of Cheramie's claims VI, VII and VIII.

**FACTS**[7]

On or about January 31, 2006, Tony Dardar, the owner of Tiffany's Bait Shop in Lafourche Parish, arrived at his store at approximately 5:30 a.m.  After Dardar started watching television, someone lightly knocked on the door.  Dardar looked through a window and observed two individuals wearing black suits.  Dardar unlocked his door and sat back down.  The first individual who entered the store poked a gun in Dardar's face and demanded money.  Dardar pushed the gun away and the gunman demanded money again and struck Dardar in the mouth with the gun.  Dardar stated that he had to get his money from his girlfriend's house and exited the store with the gunman.  As they walked towards Dardar's truck, the gunman made further demands for money.  Dardar opened the door of his truck, still insisting that he had to get the money from his girlfriend's residence.  At that point a customer drove up and the perpetrators fled.  Dardar could not see the faces of the perpetrators because they were covered.  He stated that the gunman was bigger than the other perpetrator.  According to the trial testimony presented by Storm Dantin, the defendant was the gunman and he was co-perpetrator.

---

[7]The facts were obtained from the Louisiana First Circuit Court of Appeal's opinion, Cheramie, 2008 WL 4190665 at *1-2.

4

Storm Dantin also testified that he and the defendant stole a van from Raceland, drove it to Thibodaux, and abandoned it in Lafayette. Susan Earley reported her 2000 Honda Odyssey van stolen on February 3, 2006, from her home at 123 Willow Court, Raceland. The van was recovered in Lafayette, Louisiana at 112 Meadow Lane. Rebecca Alexander, an expert in identification of latent prints, matched fingerprints lifted from the van to the defendant's fingerprints.

## STANDARD OF REVIEW

Amended 28 U.S.C. §§2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings. <u>Nobles v. Johnson</u>, 127 F.3d 409, 419-20 (citing 28 U.S.C. §2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. §2254(d)(2)), <u>cert. denied,</u> 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings

of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. §2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. §2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  Penry v. Johnson, 215 F.3d 504, 507 (5th Cir. 2000) (quoting Miller v. Johnson, 200 F.3d 274, 280-81 (5th Cir.), cert. denied, 531 U.S. 849 (2000)), aff'd in part, rev'd in part on  other grounds, 532 U.S. 782 (2001); Hill, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000);  Penry, 532 U.S. at 792-93;  Hill, 210 F.3d at 485.  "'A federal habeas court may not issue the writ simply because that court concludes in

its independent judgment that the state court decision applied [a Supreme Court case] incorrectly.'" <u>Price v. Vincent</u>, 538 U.S. 634, 641 (2003) (quoting <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24-25 (2002)) (brackets in original); <u>Bell v. Cone</u>, 535 U.S. 685, 699 (2002). Rather, under the "unreasonable application" standard, "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." <u>Neal v. Puckett</u>, 286 F.3d 230, 246 (5th Cir. 2002), <u>cert. denied</u>, <u>sub nom</u>, <u>Neal v. Epps</u>, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. <u>Price</u>, 538 U.S. at 641 (quoting <u>Woodford</u>, 537 U.S. at 24-25); <u>Wright v. Quarterman</u>, 470 F.3d 581, 585 (5th Cir. 2006).

**<u>ANALYSIS</u>**

**Ineffective Assistance of Appellate and Trial Counsel**

Cheramie argues that he received ineffective assistance of appellate counsel because counsel failed to raise on appeal that he received an excessive sentence, that he was denied his right to present a defense, that he received ineffective assistance of trial counsel, that his trial was unfair and that he was denied due process.[8] Cheramie argues that he received ineffective assistance of trial counsel because he "failed to obtain an expert

---

[8]Rec. Doc. No. 1, pp. 21 and 31.

psychologist eye witness specialist for the defense"[9] and failed to develop the argument that he was misidentified by state witnesses.

To prove ineffectiveness on the part of trial and/or appellate counsel, a petitioner must satisfy the two-prong test enunciated in Strickland v. Washington, 466 U.S. 668 (1984). See Busby v. Dretke, 359 F.3d 708, 714 (5th Cir.), cert. denied, 541 U.S. 1087 (2004) (citations omitted) ("The familiar Strickland framework applies to a prisoner's claim that his appellate counsel was ineffective for failing to raise a certain issue on appeal."). Under Strickland, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. If a court finds that petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong.

Under the deficient performance prong of the Strickland test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" Lockhart v. Fretwell, 506 U.S. 364, 371 (1993) (citing Strickland, 466 U.S. at 690). To prove prejudice under the Strickland standard, petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

_____

[9]Rec. Doc. No. 1, p. 33.

8

errors, the result of the proceeding would have been different."
Strickland, 466 U.S. at 694.

The issue of ineffective assistance of counsel is a mixed question of law and fact. Woodfox v. Cain, 609 F.3d 774, 789 (5th Cir. 2010); Richards v. Quarterman, 566 F.3d 553, 561 (5th Cir. 2009). The question before this Court is whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

The only argument which Cheramie sets forth in support of his ineffectiveness claims is his inability to present a defense because the identification process used to link him to the crimes was unreliable. Cheramie states his appellate counsel "failed to develop the defendant's defense" that he was misidentified by the State's witnesses and that the identification procedures employed by the State were suggestive. His "trial attorney rendered ineffective assistance of counsel, when he failed to object to the state using suggestive procedures of identification during trial." Cheramie provides that counsel should have obtained "an expert psychologist eye witness specialist" to challenge his identification.[10] Cheramie argues that "[t]here wasn't any kind of physical line-up with the eye-witnesses and there wasn't any photographic line-up with the witnesses, so, the in-court

---

[10]Rec. Doc. No. 1, pp. 31, 33 and 34.

identification procedures, were surely and clearly suggestive and quite unconstitutional."[11]

A review of the state court record reflects that no physical or photographic lineups were presented to witnesses for identification purposes. However, the lack of such lineups did not render the evidence insufficient for the purpose of identifying Cheramie as one of the perpetrators of the crimes. The need for pre-trial lineups was obviated due to the fact that most of the witnesses were acquainted with Cheramie.

One of the State's witnesses was Storm Dantin, Cheramie's accomplice in the crimes for which Cheramie was convicted. There was no question regarding Dantin's ability to identify Cheramie. Dantin was well-acquainted with Cheramie and provided detailed testimony regarding their actions in the crimes they committed.[12]

Rosalie Griffin testified that she knew Cheramie. She stated that Cheramie and Dantin arrived at her house shortly after the robbery. She stated that both Cheramie and Dantin seemed nervous and that Cheramie shaved Dantin's hair.[13]

---

[11]Rec. Doc. No. 1, p. 31.

[12]St. Rec. Vol. 2 of 4, trial transcript, pp. 189-97.

[13]St. Rec. Vol. 2 of 4, trial transcript, pp. 265-69.

Similarly, Randy Cheramie, petitioner's brother, and Rusty LeBouef, a friend, obviously knew Cheramie. They testified that they picked up Cheramie and Dantin after the robbery.[14]

The Court finds that neither trial counsel nor appellate counsel were ineffective in failing to raise as a defense the claim that Cheramie was not properly identified as one of the robbers because no pre-trial identification line-ups were performed. Such a defense would have been frivolous and counsel is not ineffective for failing to raise a frivolous claim. Lindsey v. Cain, 267 Fed. Appx. 374, *1 (5th Cir.2008) (counsel is not ineffective by failing to raise frivolous or futile claims) (citing Johnson v. Cockrell, 306 F.3d 249, 255 (5th Cir.2002); United States v. Mouton, 2012 WL 5305092 (W.D. La. Sept. 6, 2012), adopted, 2012 WL 5305145 (W.D. La. Oct. 25, 2012) (appellate counsel not ineffective for failing to raise frivolous argument on appeal) (citing Williams v. Collins, 16 F.3d 626, 635 (5th Cir. 1994); United States v. Garcia, 348 Fed. Appx. 65, 66 (5th Cir. 2009) (citation omitted)); United States v. Smith, 2009 WL 2461617, *6 (W.D. La. Aug. 10, 2009) (trial counsel cannot be considered ineffective for failing to make frivolous argument).

Thus, the Court finds that Cheramie's claims that he received ineffective assistance of trial and appellate counsel are without

---

[14]St. Rec. Vol. 2 of 4, trial transcript, pp. 12-15, 32 and 39.

merit. The state courts' rejection of these claims was not contrary to or an unreasonable application of clearly established federal law.

**Insufficiency of Evidence/Perjured Testimony**

Cheramie argues that there was insufficient evidence to support his convictions because state witnesses offered false/perjured testimony. Cheramie does not contest that the crimes were committed, but asserts that he was not properly identified as the person who committed the crimes.

Under Jackson v. Virginia, 443 U.S. 307 (1979), this Court must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. Id., 443 U.S. at 319; Perez v. Cain, 529 F.3d 588, 594 (5th Cir.2008); Williams v. Cain, 408 Fed. Appx. 817, 821 (5th Cir.2011). Thus, to determine whether commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law. Perez, 529 F.3d at 594 (citing Jackson, 443 U .S. at 324 n. 16). The court's consideration of the sufficiency of the evidence extends only to what was presented at trial. See McDaniel v. Brown, 558 U.S. 120, 130 S.Ct. 665, 672, 674 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 Fed. Appx. 89, 91 (5th

Cir.2009)(<u>Jackson</u> standard relies "upon the record evidence adduced at the trial")(quoting <u>Jackson</u>, 443 U.S. at 324).

Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations are the exclusive province of the jury. <u>United States v. Young</u>, 107 Fed. Appx. 442, 443 (5th Cir.2004) (citing <u>United States v. Garcia</u>, 995 F.2d 556, 561 (5th Cir.1993)); <u>see</u> <u>Jackson</u>, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts"). Thus, all credibility choices and conflicting inferences must be resolved in favor of the verdict. <u>Ramirez v. Dretke</u>, 398 F.3d 691, 695 (5th Cir.2005).

A reviewing federal habeas court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. <u>Alexander v. McCotter</u>, 775 F.2d 595, 598 (5th Cir.1985). In addition, "[t]he <u>Jackson</u> inquiry 'does not focus on whether the trier of fact made the correct guilt or innocence determination, but rather whether it made a rational decision to convict or acquit.'" <u>Santellan v. Cockrell</u>, 271 F.3d 190, 193 (5th Cir. 2001) (quoting <u>Herrera v. Collins</u>, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact. <u>Perez</u>, 529 F.3d at 594; <u>Maes v. Thomas</u>, 46 F.3d 979,

988 (10th Cir.1995). Therefore, this Court must examine whether the state courts' denial of relief was contrary to or an unreasonable application of United States Supreme Court precedent.

Cheramie was convicted of attempted armed robbery, aggravated battery and theft of a vehicle valued at over $500.00.

> Armed robbery is the taking of anything of value belonging to another from the person of another or that is in the immediate control of another, by use of force or intimidation, while armed with a dangerous weapon. La. R.S. 14:64A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended. La. R.S. 14:27A. A battery is, in part, the intentional use of force or violence upon the person of another. La. R.S. 14:33. Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. Theft is, in part, the taking of anything of value which belongs to another, without consent of the other and with the intent to permanently deprive the other of the subject of the taking. La. R.S. 14:67A.

Cheramie, 2008 WL 4190665 at *4.

Cheramie contends that there was insufficient evidence to support his convictions because State witnesses Randy Cheramie and Rusty LeBouef testified falsely when they stated that he and his accomplice, Storm Dantin, bragged about their attempted armed robbery of Tiffany's Bait Shop.[15] In support of his claim, Cheramie points to the police report and Storm Dantin's testimony which

---

[15]St. Rec. Vol. 2 of 4, trial transcript, pp. 12, 16; 32, 39.

allegedly reflect that neither Cheramie nor Dantin bragged about the crime.

A review of the pertinent portion of the police report reflects that the reporting officer simply documented the statement which Storm Dantin provided.

> Storm said he (Randy) was asking why this and why that, and Jimmy kept saying nothing, nothing happened. Storm said Jimmy was telling him [to] make sure if anybody ask[ed] you anything, he doesn't care who it is, nothing happened you don't know what the f_ _ _ they are talking about don't say nothing if you have to. Storm said he told Jimmy alright he wasn't gonna do it.... Storm said Randy didn't know nothing about nothing.[16]

At trial, Dantin similarly testified:

> Q. When y'all got in the car [with Randy and Rusty] did y'all talk about what had happened at Tiffany's?
>
> A. We didn't talk about it....
>
> Q. Now isn't it true that y'all bragged about Jimmy hitting Tony in the mouth?
>
> A. No, sir....
>
> Q. Didn't y'all tell Randy and Rusty that Tony had slapped at the gun when Jimmy put it in his face?
>
> A. I didn't say none of that. I don't remember him saying - I don't remember Jimmy saying nothing either. If he did, I don't remember.[17]

Cheramie also points to witnesses' inaccurate descriptions of their assailant. Cheramie points to Dardar's inaccurate estimation that his assailant was only slightly taller than Dardar's height of

---

[16]Rec. Doc. No. 1-1, pp. 1-2.

[17]St. Rec. Vol. 2 of 4, trial transcript, pp. 201-02.

5'5", when Cheramie is actually 6' tall.[18]  Cheramie also points to
the fact that Dardar, along with Spree Dunn, originally thought
Cheramie was a black man.[19]  Also, Dardar initially believed that
the robbery was a joke, that one of his friends was pointing a gun
at him.  Dardar stated that he thought the perpetrator was his
friend, Jamie Landry, because Landry "talks the same way."[20]

Finally, Cheramie attacks the credibility of Storm Dantin's
testimony, stating that it was unreliable because it was provided
in exchange for a plea deal.  Dantin admitted at trial that he was
testifying because the State offered him a ten-year plea deal.[21]
Further, Cheramie points to Dantin's testimony on cross-examination
that it was not right that he was taking the stand, he did not want
to take the stand and, in response to defense counsel's question
whether he was falsely accusing Jimmy Cheramie, Dantin responded,
"Yes, sir."[22]  On redirect examination Dantin clarified that he did
not want to take the stand because he did not want to be a "rat."

---

[18]St. Rec. Vol. 2 of 4, trial transcript, pp. 242, 245; Rec. Doc.
No. 1, p. 24.

[19]St. Rec. Vol. 2 of 4, trial transcript, pp. 246; St. Rec. Vol.
3 of 4, trial transcript, pp. 50, 58.  Cheramie was not convicted
in connection with the charges (counts 4 and 5) related to Ms.
Dunn.

[20]St. Rec. Vol. 2 of 4, trial transcript, pp. 240, 246-47.

[21]St. Rec. Vol. 2 of 4, trial transcript, p. 232.

[22]St. Rec. Vol. 2 of 4, trial transcript, pp. 232-33.

However, he admitted that his trial testimony, though reluctantly provided, was the truth.[23]

All of Cheramie's arguments are based upon alleged inadequacies in the trial testimony. Cheramie points to conflicts between the testimony of Randy Cheramie and Rusty LeBouef and that of Storm Dantin as reflected in his trial testimony and his statement to police. Cheramie relies on the inaccuracies of the descriptions provided by Tony Dardar and Spree Dunn, in particular, their original belief that their assailant was a black man. Cheramie also relies on the inherent unreliability of Storm Dantin's testimony because it was based upon a plea bargain agreement with the State. All of these inadequacies however were brought before the jury. The jury was aware that the testimony of Randy Cheramie and Rusty LeBouef conflicted with the testimony of Storm Dantin. They were aware of the deficiencies in the descriptions provided by Dardar and Spree. Jurors were also aware that Dantin had struck a deal with the State. Despite these deficiencies, the jury clearly found the witnesses credible and rendered a guilty verdict. This Court is not authorized to substitute its interpretation of the evidence or its view of the credibility of witnesses for that of the fact-finder. Alexander, 775 F.2d at 598.

---

[23]St. Rec. Vol. 2 of 4, trial transcript, p. 233.

The state courts' denial of relief on Cheramie's insufficient evidence/perjured testimony claim was not contrary to or an unreasonable application of federal law. Cheramie is not entitled to relief on this claim.

**Bill of Information**

Cheramie claims that his constitutional rights were violated by virtue of the bill of information used to charge him with the crimes for which he was tried. He contends that the bill of information, which did not set forth the elements of the crimes, was too vague to give him proper notice and, therefore, he was unable to prepare a defense.

The sufficiency of a state charging instrument is not a matter for federal habeas relief unless it can be shown that the instrument is so defective that it deprives the state court of jurisdiction. McKay v. Collins, 12 F.3d 66, 68 (5th Cir.), reh'g granted in part on other grounds sub nom., Williams v. Collins, 12 F.3d 70 (5th Cir.1994) (per curiam). The United States Fifth Circuit Court of Appeals has observed that the sufficiency of a state charging instrument is fatally defective only when there are no circumstances under which there could be a valid conviction based on that instrument, and that "determination can be made only by looking to the law of the state." Liner v. Phelps, 731 F.2d 1201, 1203 (5th Cir. 1984) (internal quotation marks omitted) (emphasis in original).

Louisiana law provides:

> The information may be in substantially the following form:
>
>      In the (Here state the name of the court.) on the
> ____ day of ____, 19____. State of Louisiana v. A.B.
> (Here state the name or description of the accused.).
>
>      X.Y., District Attorney for the Parish of ____,
> charges that A.B. (Here state the name or description of
> the accused.) committed the offense of_____, in that
> (Here set forth the offense and transaction according to
> the rules stated in this Title. The particulars of the
> offense may be added with a view to avoiding the
> necessity for a bill of particulars.) contrary to the law
> of the state of Louisiana and against the peace and
> dignity of the same.

La.C.Cr.P. art. 463. Louisiana law further requires that the
charging instrument set forth "a plain, concise, and definite
statement of the essential facts constituting the offense charged."
La.C.Cr.P. art. 464.[24]

---

[24]For many years, Louisiana courts insisted that charging
documents be technically sufficient. However, in State v. James,
305 So.2d 514 (La.1974), the Louisiana Supreme Court changed
course, holding:

> [W]here in fact an accused has been fairly informed of
> the charge against him by the indictment and has not been
> prejudiced by surprise or lack of notice, the technical
> sufficiency of an indictment may not be questioned after
> conviction where, as here, no objection was raised to it
> prior to the verdict and where, without unfairness, the
> accused may be protected against further prosecution for
> any offense or offenses charged by it through examination
> of the pleadings and the evidence in the instant
> proceeding.

Id. at 516–17. In reaching that conclusion, the Louisiana Supreme
Court noted:

> The defendant's right to know in advance of the trial
> sufficient particulars as to enable him to defend himself

Cheramie was charged by a bill of information which alleged:

> CAMILLE A. "CAM" MORVANT, II, District Attorney for the Seventeenth Judicial District of the State of Louisiana, who, in the name of and by the authority of the said State, prosecutes in its behalf, in the Parish of Lafourche, and informs the said court that one JIMMY CHERAMIE, 286 EAST 75TH, CUT OFF, LA., between January 31st and February 3rd in the year of our Lord, Two Thousand and Six in the Parish of Lafourche, and within the jurisdiction of the Seventeenth Judicial District Court in and for the Parish of Lafourche,
>
> COUNT 1-committed theft of [a] vehicle of a value of over $500.00, in violation of R.S. 14:67, the victim bing [sic] Curtis Orgeron.
>
> COUNT 2-committed an attempted armed robbery, in violation of R.S. 14:64, the victim being Tony Dardar.
>
> COUNT 3-committed aggravated battery with a dangerous weapon, in violation of R.S. 14:34, the victim being Tony Dardar.
>
> COUNT 4-committed the crime of armed robbery, in violation of R.S. 14:64, the victim being Spree Dunn.
>
> COUNT 5-committed aggravated burglary, in violation of R.S. 14:60, the victim being Spree Dunn.
>
> COUNT 6-committed theft of a vehicle of the value of over $500.00, in violation of R.S. 14:67, the victim being Susan Early, contrary to the form of the statute of the State of Louisiana, and against the peace and dignity of the same.[25]

---

> intelligently can be adequately protected by the bill of particulars and other discovery devices authorized and to be authorized. Similarly, modern technology and the common practice of transcribing the evidence in criminal trials, now protects him against further prosecution for the crime for which tried by an indictment which, although indicating the specific crime charged, might be considered insufficient if strictly construed.

Id. at 517.

[25]State Rec. Vol. 1 of 4, p. 22.

Cheramie claims that the bill of information was defective because it fails to set forth the essential elements of the crimes charged. Cheramie, however, has cited no authority for his contention that the elements of the charged crimes must be included in the bill of information and this Court is aware of none.

Cheramie argues that the bill of information was defective because it is vague and ambiguous. However, the bill of information clearly sets forth the four-day period, January 31st to February 3rd, during which Cheramie engaged in his crime spree. The bill sets forth the names of his victims and the specific crimes he committed against these victims. It is beyond question that the bill of information fairly informed Cheramie of the charges against him, did not prejudice him by surprise or lack of notice, and protected him against further prosecution for the same crimes, and, therefore, the bill of information was not so fatally defective as to deprive the trial court of jurisdiction under state law. Accordingly, Cheramie is not entitled to federal habeas corpus relief.

**Plea Bargain**

Cheramie argues that the State failed to disclose the plea agreement it entered into with Dantin in exchange for Dantin's testimony. Cheramie states that if the jury had known about the plea agreement, "the jury may have rejected the testimony of this

key witness, upon which the states [sic] case admittedly rested."[26]
Cheramie asserts that plea agreements "are a classic form of <u>Brady</u>
material" and the prosecution may not suppress such evidence.

Cheramie's recitation of the law is correct.  Under <u>Brady v.</u>
<u>Maryland</u>, 373 U.S. 83 (1963), the prosecution cannot withhold
exculpatory or impeachment evidence which is material to guilt or
punishment and evidence of a plea agreement reached with Dantin
would fall under the parameters of <u>Brady</u>.  However, Cheramie's
factual predicate is incorrect.  As shown below, the prosecution,
on its direct examination of Dantin, did disclose the plea
agreement, thereby making the jury aware of the conditions under
which Dantin was testifying.

> Q.  Now you agreed to plead guilty to these charges,
> correct?  You have similar charges brought against you,
> right?
> A.  Yes, sir.
> Q.  And you agreed to plead guilty?
> A.  Yes, sir.
> Q.  You admitted to what you did?
> A.  Yes, sir.
> Q.  **And what was the offer made by the District
> Attorney's office when you agreed that you were going to
> plead guilty?  What was your sentence going to be?**
> A.  I don't even remember.
> Q.  **Is it ten years?  Does that sound right.**

---

[26]Rec. Doc. No. 1, p. 45.

A.  I think so....[27]

On cross-examination, the fact that Dantin had entered into a plea agreement with the State was reiterated.

Q.  Now you testified earlier that you got ten years in exchange for your testimony today?
A.  That's what they said.  I really didn't want to take the stand.
Q.  But you're testifying today because you're getting a ten-year deal?
A.  I guess.[28]

Based upon the above, the Court finds that the State did disclose the plea deal that it entered into with Dantin in exchange for his testimony against Cheramie.  The state courts' rejection of the instant claim does not represent an unreasonable application of Supreme Court law to the facts of this case.

**Excessive Sentence**

Cheramie claims that the imposed "maximum sentence" of 35-years for his attempted armed robbery conviction,[29] to run consecutively with his other sentences, was excessive, in violation

---

[27]St. Rec. Vol. 2 of 4, trial transcript, pp. 212-13 (emphasis added).

[28]St. Rec. Vol. 2 of 4, trial transcript, p. 232.

[29]Though Cheramie repeatedly refers to his 35-year sentence as being the maximum sentence he could have received for his attempted armed robbery conviction, he also states that "the maximum sentence for a first offender for attempted armed robbery was a mandatory twelve years or less."  Rec. Doc. No. 1, p. 48.

of the Eighth Amendment and Louisiana state law.[30] Cheramie argues that a sentencing court must take into consideration "the criteria set forth in La. C. Cr. P. art. 894.1 and must accord proper weight to all relevant sentencing factors."[31] Cheramie states that the sentencing court failed to consider his "youthful age of 21 years," the prospect of his rehabilitation based upon his family ties and that he "was a first offender, with no adult felonies and no career criminal history."[32] He states that the trial court "erroneous[ly]" considered his juvenile convictions and arrests and adult arrests to justify imposing an excessive sentence.[33]

Cheramie also asserts that the imposition of consecutively-running sentences was improper. Cheramie, relying on La. C. Cr. P. art. 883, states that for "two or more offenses based on the same act or transaction," a concurrent sentence should be imposed. The same is true for a "person without a prior criminal record."[34]

---

[30]Cheramie was sentenced to 35 years imprisonment in connection with his attempted armed robbery conviction; five years imprisonment for his aggravated battery conviction; and five years imprisonment for his theft of property valued at $500.00 or more. The trial court ordered that the sentences be served consecutively. Cheramie, 2008 WL 4190665 at *1.

[31]Rec. Doc. No. 1, p. 47.

[32]Rec. Doc. No. 1, pp. 47-48.

[33]Rec. Doc. No. 1, p. 48.

[34]Rec. Doc. No. 1, p. 49.

To the extent Cheramie is arguing that his sentence was excessive under Louisiana law, such claims are not cognizable in this federal proceeding. Federal habeas corpus relief is available only for violations of federal constitutional law. Narvaiz v. Johnson, 134 F.3d 688, 695 (5th Cir.1998); see also Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, *13 (E.D. La. June 16, 2009).

To the extent Cheramie is arguing that his sentence is excessive under the Eighth Amendment of the United States Constitution, that argument has no merit. In Solem v. Helm, 463 U.S. 277, 284 (1983), the Supreme Court held that the Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed." "This constitutional principle is tempered, however, by the corollary proposition that the determination of prison sentences is a legislative prerogative that is primarily within the province of legislatures, not courts." United States v. Gonzales, 121 F.3d 928, 942 (5th Cir.1997) (citing Rummel v. Estelle, 445 U.S. 263, 274-76 (1980)). "[C]ourts must grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes." Gonzales, 121 F.3d at 942 (quotation marks omitted). "[T]herefore, it is firmly established that successful challenges to the proportionality of punishments should be exceedingly rare." Id.

(quotation marks omitted).  Federal courts accord broad discretion to a state trial court's sentencing decision that falls within legislative limits.  <u>Haynes v. Butler</u>, 825 F.2d 921, 923–24 (5th Cir.1987).

Contrary to Cheramie's claim, the trial court's sentencing was in accordance with "the criteria set forth La. C. Cr. P. art. 894.1."[35]  The trial court stated:

> I find that there is an undue risk that during the period of a suspended sentence or probation that the Defendant will commit another crime.  The Defendant is in need of a custodial environment that can be provided most effectively by his commitment to an institution.
>
> Further, I find that a lesser sentence would deprecate the seriousness of the Defendant's crime.[36]

The trial court also considered, contrary to Cheramie's assertion, relevant sentencing factors, providing:

> The Court has had an opportunity to review both the juvenile and adult record of the Defendant.  The Court would note that at the time of his arrest the Defendant was just beyond his 21st birthday.  And yet in four years as an adult he accumulated some ten convictions.
>
> There were several charges, three of which included felony charges, that were later reduced to simple battery

---

[35]La. C. Cr. P. art. 894.1(A) provides that a "court should impose a sentence of imprisonment if any of the following occurs:  (1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime.  (2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution.  (3) A lesser sentence will deprecate the seriousness of the defendant's crime."

[36]St. Rec. Vol. 3 of 4, sentencing transcript, pp. 7-8.

and aggravated assault. There are at least two previous charges of burglary and two prior unauthorized entries of an inhabited dwelling.

In short, the criminal history of Mr. Cheramie reflects to the Court that he has been committing crimes against persons. That is to say he has presented a great danger of harm to the general public in that his commission of crimes involves victims by forcing entry into homes and by assault and by battery.

On his juvenile record it again entails the use of violence towards the person of others. I also find that in the commission of the charge for which he has been convicted, the only thing that was not perfected in the attempted armed robbery, which did not allow an armed robbery conviction, is the taking of something.

He armed himself with a weapon, he entered the store, which also served as a dwelling, but he entered the store, he pulled the pistol, he threatened the victim, and then he went beyond that, after having control of the situation, he struck the victim with the weapon. I guess the common term is pistol whipped the victim, despite that the victim, according to all testimony, made no attempt to forcibly oppose the Defendant in the commission of the crime.[37]

Further, contrary to Cheramie's claim, the imposed 35-year sentence was <u>not</u> the maximum sentence the trial court could have imposed. La. Rev. Stat. §14:27(D)(3) provides, in pertinent part, that the sentence for a defendant convicted of attempting a crime such as armed robbery, shall not exceed "one-half of the longest

---

[37]St. Rec. Vol. 3 of 4, sentencing transcript, pp. 8-9. Cheramie asserts that "[i]t was erroneous, for the sentencing judge to use the defendant's juvenile adjudication's [sic] and juvenile arrests and adult arrests, to justify giving the defendant harsh sentences and excessive sentences." Rec. Doc. No. 1, p. 48. Cheramie, however, provides no law to support his claim and this Court has uncovered no law providing that a court may not consider a defendant's juvenile convictions and arrests and adult arrests in imposing sentence.

term of imprisonment prescribed for the offense so attempted."
Under La. Rev. Stat. §14:64(B), the longest sentence for an armed
robbery conviction is "ninety-nine years."  Thus, the maximum
sentence Cheramie could have received was 49 years and six months.
The imposed 35 years was within statutory limits.

Similarly, the trial court did not run afoul of any
legislative limit when he ordered that Cheramie's sentences run
consecutively.   Contrary to Cheramie's claim, a court is not
restricted from imposing consecutive sentences when the offenses
arise from the same act or transaction.  In such a situation La. C.
Cr. P. art. 883 provides for concurrently running sentences "<u>unless
the court expressly directs that some or all be served
consecutively</u> [emphasis added]."  In this case, the trial court did
expressly direct that Cheramie's sentences run consecutively.[38]
Cheramie further asserts that consecutive sentences cannot be
imposed upon a person without a prior conviction.  Cheramie cites
no law to support his claim in this regard and this Court has found
no supporting law.

Based upon the above, the Court finds that Cheramie's 35-year
sentence running consecutively with his five-year sentences, was not
unconstitutionally excessive.  The sentence was within legislative

---

[38]St. Rec. Vol. 3 of 4, sentencing transcript, pp. 10-11.
Additionally, the Court notes that Cheramie's theft conviction
arose from an act which occurred some 24 hours or more after his
attempted armed robbery and aggravated battery.  Thus, the theft
conviction would not fall under the provisions of Article 883.

limits and the sentence was justifiable given Cheramie's extensive criminal history.  Accordingly;

## RECOMMENDATION

It is hereby recommended that the application for federal habeas corpus relief filed by petitioner, Jimmy Cheramie, should be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 14 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  28 U.S.C. §636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996)(en banc).[39]

New Orleans, Louisiana, this 10th day of    January    , 2012.

_____
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[39]Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.